IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| HAI NGUYEN, ADMINISTRATOR OF THE ESTATE OF SABRINA NGUYEN, deceased,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF MEMPHIS, TENNESSEE; SHELBY COUNTY, TENNESSEE; ANDRES JUAREZ, individually, DANIEL ADAMS, individually, JAMES PREBLE, individually, D. INGLEHARTE, individually, RUSSELL STEVENS, individually, PATRICK MULROY, individually, JAMES BOYLAN, individually,<br><br>    Defendants. | Case No. 2:21-cv-2003 |

**ORDER GRANTING DEFENDANT SHELBY COUNTY'S MOTION TO DISMISS**

**ORDER GRANTING DEFENDANT CITY OF MEMPHIS'S MOTION TO DISMISS**

**ORDER DENYING DEFENDANT OFFICERS' MOTION TO DISMISS**

Before the Court is Defendant Shelby County's ("Shelby County") Motion to Dismiss First Amended Complaint, filed May 10, 2021. (ECF No. 39.) Also before the Court is Defendant City of Memphis's ("City of Memphis") Motion to Dismiss First Amended Complaint, filed May 13, 2021. (ECF No. 40.) Also before the Court are Defendant Officers Juarez, Adams, Preble, Inglehart, Russell, Mulroy, and Boyland's (collectively, "Defendant Officers") Motion to Dismiss

1

the Amended Complaint, filed May 24, 2021. (ECF No. 44.) For the reasons discussed below, the Motions to Dismiss filed by the City of Memphis and Shelby County are **GRANTED**. The Defendant Officers' Motion to Dismiss is **DENIED**.

I. **BACKGROUND**

    a. **Procedural Background**

Plaintiff Hai Nguyen is the father and administrator of the estate of the deceased, Sabrina Nguyen. Plaintiff filed an Amended Complaint in this matter on May 7, 2021. ("Am. Compl.", ECF No. 38.) The Amended Complaint alleges substantive due process violations pursuant to 42 U.S.C. § 1983 against Shelby County, the City of Memphis, and Defendant Officers (collectively, "All Defendants"), as well as violations of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against City of Memphis and Defendant Officers. (See generally id.) Shelby County filed a Motion to Dismiss for Failure to State a Claim on May 10, 2021. (ECF No. 39.) City of Memphis filed its Motion on May 13, 2021, and Defendant Officers filed a Motion to Dismiss on May 24, 2021. (ECF Nos. 40, 44.) Plaintiff filed a Response in Opposition to both Shelby County's Motion to Dismiss and City of Memphis's Motion to Dismiss on June 1, 2021. (ECF Nos. 47, 48.) Shelby County and City of Memphis each filed a Reply to Plaintiff's Response on June 14, and June 15, 2021, respectively. (ECF Nos. 49, 50.) Plaintiff also filed a Response in Opposition to Defendant Officers' Motion on June 28, 2021. (ECF No. 54.) Defendant Officers filed a Reply to Plaintiff's response on July 26, 2021. (ECF No. 57.)

    b. **Factual Background**

This action arises out of the tragic death of Sabrina Nguyen ("Sabrina"), a Vietnamese-American 18-year-old adult residing in the Hyde Park neighborhood of Memphis, Tennessee. (Am. Compl., ECF No. 38 ¶¶ 3–5.) This case is brought by Sabrina's father, Hai Nguyen, on

behalf of Sabrina's estate and also on behalf of her wrongful death beneficiaries, including her father, mother, and two brothers. (Id. ¶ 4.)

Sabrina was allegedly killed by her ex-boyfriend Keedrin Coppage ("Coppage") on January 2, 2020. (Id. ¶ 2.) They began dating in early 2019, before Coppage began physically and mentally abusing Sabrina. (Id. ¶ 29.) Plaintiff alleges that throughout the course of the relationship, and specifically between April and June 2019, Coppage hit Sabrina on the head with a bag of tools, smashed her cell phone and assaulted her, and knocked her unconscious and kidnapped her. (Id. ¶ 30.) On or about June 15, 2019, Defendant Officers placed Sabrina in a safe house or assisted in her placement in a safehouse due to the imminent threat and danger presented by Coppage. (Id. ¶ 31.) On June 17, 2019, a protective order was entered to prevent Coppage from having further contact with Sabrina. (Id. ¶ 32.)

Approximately one week after being admitted to the safe house, Sabrina left the location to travel to the hospital due to lingering injuries from a prior attack from Coppage. (Id. ¶ 33.) Upon return from the hospital, she was refused reentry into the safe house by Defendant Officers and was instead forced to return to her residence in Hyde Park. (Id. ¶¶ 34–35.) Coppage had knowledge that there was a protective order filed against him, and in August 2019, he once again kidnapped Sabrina, sexually assaulted her, and transported her to Collierville, Tennessee, where she eventually received hospital treatment. (Id. ¶ 37.) On or about September 11, 2019, Coppage continued to threaten Sabrina via telephone and text message, before eventually attacking her and attempting to abduct her. (Id. ¶ 38.) These gruesome physical, sexual, verbal, and virtual attacks on her continued between September 2019 and December 2019. (Id. ¶ 39.) Sabrina escaped a third kidnapping on December 19, 2021 and sought protection from Coppage from the Memphis Police Department ("MPD"). (Id. ¶ 40.) On December 20, 2021, Sabrina was again kidnapped

for three days, before she again went to MPD to seek assistance. (Id. ¶¶ 41–42.) According to the Amended Complaint, MPD policy requires officers to transport a domestic violence victim to a place of safety, but the officers did not do this for Sabrina. (Id. ¶ 42.) The requirement that officers transport a domestic violence victim to safety is consistent with the MPD's Lethality Assessment Program ("LAP"), which screens domestic violence victims for the purposes of reducing domestic violence homicides and increasing access to services for domestic violence victims. (Id. ¶¶ 20–23.) Sabrina was last seen alive on December 31, 2019 near the Hyde Park neighborhood of Memphis, Tennessee. (Id. ¶ 44.) On January 2, 2020, Sabrina's body was found on a sidewalk at the intersection of Jackson Avenue and Maple Drive, and the cause of death was determined to be homicide. (Id. ¶¶ 45–46.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cty., 814 F.2d 277, 279 (6th Cir. 1987)). A motion to dismiss only tests whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases which would waste judicial resources and result in unnecessary discovery. Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). If a court decides that the claim is not plausible, the case

4

may be dismissed at the pleading stage. Iqbal, 556 U.S. at 679. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A complaint need not contain detailed factual allegations. Twombly, 550 U.S. at 570. A plaintiff without facts who is "armed with nothing more than conclusions," however, cannot "unlock the doors of discovery." Iqbal, 556 U.S. at 678-79; Green v. Mut. of Omaha Ins. Co., No. 10-2487, 2011 WL 112735, at *3 (W.D. Tenn. Jan. 13, 2011), aff'd, 481 F. App'x 252 (6th Cir. 2012).

Assessing the facial sufficiency of a complaint ordinarily must be undertaken without resorting to matters outside the pleadings. Wysocki v. Int'l Bus. Mach. Corp., 607 F.3d 1102, 1104 (6th Cir. 2010). "[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); see also Koubriti v. Convertino, 593 F.3d 459, 463 n.1 (6th Cir. 2010). Even if a document is not attached to a complaint or answer, "when a document is referred . . . in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." Commercial Money Ctr., 508 F.3d at 335–36. When evaluating a motion to dismiss, the Court may also take judicial notice of pertinent matters of public record, including bankruptcy filings. Signature Combs, Inc. v. United States, 253 F. Supp. 2d 1028, 1040 n.5 (W.D. Tenn. 2003).

## III. ANALYSIS

### A. *Plaintiff's Substantive Due Process Claims*

"To prevail on a cause of action under [42 U.S.C.] § 1983, a plaintiff must prove '(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" Shadrick v. Hopkins Cty., 805 F.3d 724, 736 (6th Cir. 2015) (quoting Jones v. Muskegon Cty., 625 F.3d 935, 941 (6th Cir. 2010)). Municipalities can be held liable for constitutional violations under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694 (1978). A municipality is not liable under § 1983 "*solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Id. at 659 (emphasis in original). To establish municipal liability under § 1983, "a plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." Rayfield v. Grand Rapids, 768 F. App'x 496, 510 (6th Cir. 2019) (quoting Bd. of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997) (internal quotations omitted)). The Court first addresses whether Plaintiff has adequately pled a Monell violation against Shelby County or City of Memphis. The Court will then address whether Plaintiff has adequately pled a cause of action for a constitutional violation against Defendant Officers.

### i) *Plaintiff Has Not Adequately Pled a Monell Claim Against Shelby County or City of Memphis*

Plaintiff's Amended Complaint does not assert or point to a government policy or custom such that liability can attach to Shelby County or the City of Memphis. (See generally Am. Compl., ECF No. 38) At best, Plaintiff has recited the Monell standard, stating that "defendants'

failure to act was pursuant to a custom, pattern and/or practice of affording inadequate protection, or no protection at all, to minority women from disadvantaged [neighborhoods] who have complained of having been abused or sexually assaulted by people they know" and that such "pattern of police misconduct was so pervasive as to constitute a 'custom or usage' with the force of law." (See id. ¶ 68; see also id. ¶¶ 69–71.)

Without more, this is insufficient for a Monell claim. A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom. Monell, 436 U.S. at 694. "A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013).

Plaintiff has not pled sufficient facts under either an inadequate training or custom of tolerance theory. To succeed on a failure to train claim, a plaintiff must show that that: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." Brown v. Chapman, 814 F.3d 447, 463 (6th Cir. 2016) (internal quotations omitted). Here, Plaintiff refers to the MPD's Lethality Assessment Program ("LAP") in the Amended Complaint as the policy the Defendant Officers should have followed. The existence of such a program implies that there is a policy and training in place that was adequate, although it was not properly carried out in this instance. (See ECF No. 38 ¶¶ 20–28.) When a plaintiff "has none but his own experience upon which to rely, a sufficient claim against the

7

municipality has not been made." Epperson v. City of Humboldt, Tenn., 140 F. Supp. 3d 676, 685 (W.D. Tenn. 2015).  At best, Plaintiff alleges that "MPD officers and SCSO deputies knew or should have known that on average a person will attempt to leave an abusive situation seven times before they finally escape." (ECF No. 38 ¶ 28.)  This allegation is insufficient, however, in the full context of the LAP program used by MPD.  The LAP program shows that there was a policy in place to protect domestic violence survivors, thus there was not deliberate indifference, a custom of tolerance, or inadequate training by the City of Memphis.

For Shelby County, Plaintiff has also failed to allege an adequate Monell claim.  There are no allegations that Shelby County or the Shelby County Sheriff's Department was involved in the death of Sabrina, further evidenced by the fact that only MPD officers, rather than SCSO officers, are listed as individual defendants.  (See generally id.)  The Amended Complaint is simply devoid of any factual allegations as to Defendant Shelby County other than the non-specific assertion that the "City and Shelby Co[unty] are the employers of the individual defendants and are governmental entities subject to the requirements of 28 U.S.C. § 1983."  (Id. ¶ 14.)  Shelby County's and City of Memphis's Motions to Dismiss the § 1983 Substantive Due Process Claims against them are **GRANTED**.

> ii) *Plaintiff has Adequately Pled a § 1983 Substantive Due Process Claim Against the Defendant Officers*

"Although [the Sixth Circuit] has never held the state or a state actor liable under the Fourteenth Amendment for private acts of violence, we nevertheless have recognized the possibility of doing so under the state-created-danger theory." Kallstrom v. City of Columbus, 136 F.3d 1055, 1066 (6th Cir. 1998).  For a successful state-created-danger claim, the plaintiff must show:

> 1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; 2) a special danger

8

to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and 3) the state knew or should have known that its actions specifically endangered the plaintiff.

Cartwright v. City of Marine City, 336 F.3d 487, 493 (6th Cir. 2003).

Plaintiff contends that he has pled an affirmative act by the state to meet this standard by pleading that the affirmative action "is *not* the *acceptance* of Sabrina in the safe house. Rather, it is *affirmatively refusing her reentry* into the safe house, a place it was apparently determined she should reside due to the imminent threat of death or great bodily harm presented by Coppage." (ECF No. 54-1 at PageID 342.) (emphasis in original). Defendants, however, contend that this pleading is insufficient to show an affirmative action on the part of the officers, particularly in light of the recent Sixth Circuit opinion in Barefield v. Hillman. (ECF No. 57 at PageID 367.)

In Barefield, the Sixth Circuit held that whether the state's placement of a foster child into a Level 1 foster home instead of a Level 3 facility increased the risk that the child would be harmed by a third party was not the appropriate analysis for determining the state's affirmative act. Barefield v. Hillman, No. 20-6002, 2021 WL 3079693, at *4 (6th Cir. July 21, 2021). The foster child was known by the state to be at risk for running away and associating with gang members, but the state had placed him in the lower security foster home because there was not a spot available at the Level 3 facility, and the child was then found shot to death several weeks later. Id. at *1. The Sixth Circuit held that the appropriate inquiry was "whether T.H. was safer from the risks of gang violence before he was placed into state custody . . . than when he was living in [the] foster home. Or alternatively, whether he was safer when he was at large after escaping the VYA than he was in [the] foster home." Id. at *4.

Similarly, in Cartwright, the Sixth Circuit held that police officers did not violate Cartwright's substantive due process rights when they picked him up intoxicated from the side of

9

the road but then had to drop him off at a convenience store when he was later run over and killed in the road nearby. 336 F.3d at 494. In Cartwright, the plaintiff alleged that there was a state created danger because "the police invited Cartwright to a safe place[,] the back seat of the patrol car[,] and then released him at a more dangerous place[,] the convenience store parking lot." Id. at 493. The Sixth Circuit held, however, that "[t]his is not the proper comparison. The question is not whether the victim was safer *during* the state action, but whether he was safer *before* the state action than he was *after* it." Id. (emphasis in original).

Here, following the Sixth Circuit's analysis in Barefield and Cartwright, the state's action would be taking Sabrina into the safehouse rather than the state's refusal of reentry after she had left it to seek medical care. Thus, the question is whether Sabrina was safer before the state action of being taken into the safehouse than she was after she left the safehouse. Here, Plaintiff has pled sufficient facts that indicate Sabrina was in greater danger from Coppage after leaving the safehouse than she was before going in. (See ECF No. 38 ¶ 37–45, 55.) (describing the escalating attacks and threats against Sabrina by Coppage that eventually led to her death after she was refused reentry into the safehouse, and in ¶ 55, stating that Coppage was "emboldened . . . to increase the level of violence he directed at Sabrina" after she left the safehouse.) From the factual allegations in the Amended Complaint, there is sufficient basis to find, at this early stage in the case, that there was an affirmative action wherein the state's actions "placed the plaintiff specifically at risk." See Cartwright, 336 F.3d at 493.

Defendants also contend that Plaintiff has failed to sufficiently plead the third requirement of the state created danger test outlined in Cartwright because "Plaintiff's Complaint has failed to allege, with particularity, facts that would demonstrate what *each* individual Defendant Officer did to violate Sabrina's constitutional rights." (ECF No. 36-1 at PageID 202.) (emphasis in

10

original).  Instead, in the Amended Complaint, Plaintiff alleged that collectively each of the Defendants "actions were unnecessary, objectively unreasonable and deliberately indifferent." (ECF No. 38 ¶ 57.)  (referring to Defendant Officers' mental state in refusing Sabrina reentry into the safe house.)    The cases Defendants cite to support their position, however, were all decided on summary judgment, with a full factual record in place.  (See id. at PageID 202; ECF No. 57 at PageID 366.)  See Lanman v. Hinson, 529 F.3d 673, 684 (6th Cir. 2008) (analyzing the actions of each individual defendant on a motion for summary judgment); Terrance v. Northville Reg'l Psychiatric Hosp., 286 F.3d 834, 842 (6th Cir. 2002) ("Terrance appeals the district court's order awarding summary judgment in favor of defendants in this 42 U.S.C. § 1983 action."); Gaddis v. Redford Twp., 364 F.3d 763, 772 (6th Cir. 2004) (affirming an appeal of the district court's grant of summary judgment; Bishop v. Hackel, 636 F.3d 757, 767(6th Cir. 2011) (reviewing the district court's denial of summary judgment).

This case is not yet at the summary judgment stage, and it is understandable that Plaintiff has not yet been able to conduct sufficient investigation to allege specific facts regarding conduct for which each Defendant Officer would have been responsible.  The Court holds that Plaintiff's allegations in the Complaint which allege each individual officer is responsible for the same actions with deliberate indifference is sufficient at this point to overcome the Motion to Dismiss.

Next, Defendants assert that qualified immunity applies even if Plaintiff adequately pled a state-created danger because "Plaintiff's argument references only a generalized right, and clearly established law must be particularized to the facts of the case." (ECF No. 57 at PageID 369.)  For a rights violation to be considered clearly established law that overcomes qualified immunity, the law must be "dictated by controlling authority or a robust consensus of cases of persuasive authority." District of Columbia v. Wesby, 138 S. Ct. 577, 589–90 (2018) (internal quotations

11

omitted). "The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." Id. at 590.

Plaintiff cites to Kallstrom as support that the Defendant Officers violated clearly established law. (ECF No. 54-1 at PageID 347.) In Kallstrom, the violation of a clearly established right was a violation of a right to privacy by "releasing private information from the officers' personnel files to defense counsel" which "placed the personal safety of the officers and their family members, as distinguished from the public at large, in serious jeopardy." 136 F.3d at 1067. The facts in Kallstrom are not similar to the alleged state-created danger here. Defendants, therefore, argue that this case does not support that the violation here was one of clearly established law. (ECF No. 57 at PageID 369–70.) The Sixth Circuit, however, has "directly addressed qualified immunity with respect to state-created danger, rejecting [an] officer's claim to qualified immunity because Kallstrom clearly established that the state may not affirmatively act in a way that creates or increases a risk of private violence, provided that the state actor had the requisite mental culpability." Lipman v. Budish, 974 F.3d 726, 749–50 (6th Cir. 2020). Sixth Circuit law holds that an affirmative action by a state actor with the required mental state is a violation of clearly established law, and as a result, Defendant Officers do not have qualified immunity. See id. As discussed above, Plaintiff's Amended Complaint, taking all factual allegations as true, provides sufficient factual detail to support the plausibility that the state-created danger requirements for mental state and affirmative state action are met. As a result, Defendant Officers' Motion to Dismiss the § 1983 Substantive Due Process Claim is **DENIED**.

    B.    *Plaintiff's Equal Protection Claims Fail Against City of Memphis, but are Sufficiently Plead for the Defendant Officers*

Plaintiff has also alleged a § 1983 Equal Protection Claim, asserting that the City of Memphis and Defendant Officers' failure to protect Sabrina was the result of discriminatory

treatment due to her race, gender, and/or status as a victim of domestic violence. (ECF No. 38 ¶¶ 58–71.) "[Supreme Court] cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated different from others similarly situated and there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). "In order to establish a violation of the Equal Protection Clause, a plaintiff must prove that she was purposefully discriminated against due to her membership in a protected class." Shorter v. Giles Cty. Police Dep't, 73 F. App'x 780, 781 (6th Cir. 2003) (citing Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1997)).

For the City of Memphis, however, this claim fails for the same reason as the substantive due process claim against the City. Plaintiff has not alleged more than conclusory language without factual basis that it was the policy or custom of the City to treat citizens differently on the basis of race or gender when they sought help from the police. See Monell, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.") (ECF No. 38 ¶ 68.) ("These defendants' failure to act was pursuant to a custom, pattern and/or practice of affording inadequate protection, or no protection at all, to minority women from disadvantaged [*sic*] who have complained of having been abused or sexually assaulted by people they know.") Further, based on the alleged policies carried out under the LAP, domestic violence victims had special policy protections in place at the organizational level, which the individual officers here were alleged to not have properly carried out. (See id. ¶ 20.) (describing the LAP as "recognized by the U.S. Department

13

of Justice as a 'promising practice' in intimate partner homicide prevention"). The City of Memphis's Motion to Dismiss is **GRANTED** with respect to the § 1983 Equal Protection Claim.

For the individual officers, Plaintiff has alleged that the Defendant Officers took actions with a discriminatory intent by:

a) refusing to investigate criminal acts—including sex crimes and kidnapping—against Sabrina and in refusing to arrest or timely arrest Coppage in December 2019;
b) failing, in Sabrina's case, to perform mandatory tasks associated with sex crimes, such as facilitating SAFE kits, preserving the crime scene; and
c) failing to properly initiate and/or complete the LAP process with Sabrina.

(Id. ¶ 66.) Plaintiff alleges that this discriminatory intent was due to Sabrina's status as "a female domestic violence and murder victim, of Asian descent, who has been treated differently on account of her race, gender and victim status." (Id.) The complaint further states that the police officers "intentionally treated her differently than other similarly situated individuals." (Id. ¶ 67.) Taking all of Plaintiff's assertions as true, there is a plausible claim made that the Defendant Officers had discriminatory intent in refusing to take action for Sabrina that was in line with MPD policies and requirements, when they likely would have taken appropriate action for others that are similarly situated but not in a protected class. See Scarbrough v. Morgan Cty. Bd. of Educ., 470 F.3d 250, 260 (6th Cir. 2006) ("The threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis is determined by the classification used by government decision-makers."). Defendant Officer's Motion to Dismiss Plaintiff's § 1983 Equal Protection Claim is **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, Defendant Officers' Motion to Dismiss is **DENIED**. The City of Memphis and Shelby County's Motions are **GRANTED**.

**SO ORDERED**, this 5th day of November, 2021.

                                                /s/ Jon P. McCalla
                                        JON P. McCALLA
                                        UNITED STATES DISTRICT JUDGE